IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HENRY COUNTY SCHOOL
DISTRICT,

                **Plaintiff,**

    v.                                  1:07-cv-1490-WSD

ACTION DEVELOPMENT, INC.
and TRAVELERS CASUALTY
AND SURETY COMPANY OF
AMERICA,

                **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Henry County School District's ("Plaintiff" or the "School District") Motion to Remand [10]. Also before the Court is Defendant Travelers Casualty and Surety Company of America ("Travelers") Motion to Drop a Party or, in the Alternative, to Sever Claims [16].

## I.   BACKGROUND

This case involves a construction dispute concerning Timber Ridge Elementary School (the "Project") in McDonough, Henry County, Georgia.[1]

---

[1] The Court discusses the facts as they are alleged by Plaintiff in its Complaint.

Plaintiff is the body corporate for the Henry County Board of Education and a political subdivision of the State of Georgia. Defendant Action Development, Inc. ("Action") is a Georgia corporation. Defendant Travelers is a Connecticut corporation.

In May 2003, the School District and Action signed a construction contract (the "Construction Contract") for Action to construct a new elementary school at the price of $8,774,000. The Construction Contract provided that time was of the essence, and Action agreed to substantially complete the Project by April 10, 2005. As required by law and the Construction Contract, Action, as principal, and Travelers, as surety, executed and provided to the School District a Performance Bond and a Payment Bond. Each bond expressly provides for joint and several liability of Action and Travelers and expressly incorporates the Construction Contract by reference.

Action began work on the Project in May 2003. By November 2004, Plaintiff was dissatisfied with Action's progress and believed that Action would not timely complete the construction. In December 2004, the School District terminated Action for default and made a written demand that Travelers perform under the Performance Bond. Plaintiff alleges that after Travelers undertook

completion of the Project, progress halted, and the Project continued to fall further and further behind schedule. Because the School District was displeased with the lack of progress being made, it began negotiating with Travelers to have it relinquish control of the Project and to permit the School District to complete construction of the school.

In April 2006, the School District and Travelers executed a Partial Settlement Agreement ("PSA") in which Travelers agreed to pay $5.3 million to the School District to resolve the dispute. In exchange, the School District agreed to complete the Project using Travelers' settlement payment, unexpended contract funds that remained in the School District's possession, and other funds. In the PSA, the parties agreed that the $5.3 million payment would be credited against the penal sum of the Performance Bond. The penal sum under the bond was $8,774,000, leaving a maximum amount recoverable by the School District under the Performance Bond of $3,474,000. The parties also agreed that Travelers retained the right to contend that other payments it made should be credited against the remaining $3,474,000 amount, and that the School District retained the right to dispute the propriety of such claimed credits. The PSA does not explicitly terminate or discharge the Performance Bond. In fact, its language anticipates the

bond would remain in place until satisfaction of all obligations between the School District and Travelers.  The PSA provides:

> Upon final completion of the Project and discharge by the Surety of all of its obligations to the Board under the Performance Bond and this Agreement, the Board shall execute and deliver to the Surety, a full and final release in favor of the Surety pertaining to any and all matters arising out of, or in connection with, the Performance Bond.

(Compl., Ex. A., ¶ 14.)  The PSA further states that: "This Agreement, together with the Performance Bond, embodies the entire understanding of the parties hereto with respect to the subject matter contained herein."  (Id. at ¶ 20.)

Pursuant to the requirements of the PSA, on March 30, 2007, Travelers provided the School District with a list of payments totaling more than $2 million that it claimed should be credited against the remaining penal sum of the Performance Bond.  (Compl., at ¶ 18.)  The School District rejected Travelers' accounting as insufficient and requested further documentation.  In May 2007, the parties met to discuss their disagreement over the accounting.  At the meeting, Travelers provided a summary of its alleged Performance Bond payments, claiming it had spent $9,284,866.90 on the Project, an amount in excess of the total penal sum of the Performance Bond.  (Id. at ¶ 21.)  Thus, Travelers claimed that it

had fulfilled all of its obligations under the Performance Bond and the PSA. The School District, on the other hand, contended that it had sustained a net loss of $3,825,313.63, and Travelers was not entitled to a credit against the Performance Bond for all the sums Travelers claimed. (Id. at ¶¶ 23-25.)

On May 24, 2007, the School District filed this action in the Superior Court of Henry County, Georgia.[2] It asserted claims against Travelers for breach of the Performance Bond and breach of the PSA because it "refus[ed] to entertain the School District's claims for its net loss under the Performance Bond." (Id. at ¶ 26.) The School District also named Action as a Defendant, alleging that by "failing to timely prosecute the Project to completion in accordance with the requirements of the Construction Contract, Action materially breached the Construction Contract and the Performance Bond." (Id. at ¶ 27.)

On June 25, 2007, Travelers filed a notice of removal, claiming diversity jurisdiction under 28 U.S.C. § 1332. Travelers argues that Action was fraudulently joined because there is no joint and several liability between Travelers and Action, and there is no "real legal or legal connection between Plaintiff's claims against

---

[2] The Performance Bond incorporates the Construction Contract, which specifically provides that Action and Travelers consent and agree to jurisdiction in the Superior Court of Henry County, Georgia.

Travelers and its claims against Action." (Opp. to Remand [15], at 2.)  Thus, Travelers argues that although normally diversity jurisdiction would not exist because Plaintiff and Action are both Georgia residents, the Court should overlook Action's Georgia citizenship.  On July 10, 2007, the School District filed its Motion to Remand, arguing that Action was not fraudulently joined because Action is jointly and severally liable with its surety, Travelers, and because there is no diversity jurisdiction, this case should be remanded to state court.  (Mot. to Remand [10], at 2.)  This Court agrees.

## II. DISCUSSION

### A. Removal and Fraudulent Joinder

The Court must, as a general matter, remand a case if the technical requirements of removal have not been met.  See Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1044 (11th Cir. 2001).  The removing defendants carry the burden to demonstrate that the removal was effected properly, and "this burden is a heavy one." Lampkin v. Media General, Inc., 302 F. Supp.2d 1293, 1294 (M.D.Ala. 2004).  Removal statutes are strictly construed in favor of state court jurisdiction.  Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

Travelers claims that this Court has diversity jurisdiction under 28 U.S.C. § 1332.  Section 1332 provides for "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a). "Diversity jurisdiction, as a general rule, requires complete diversity -- every plaintiff must be diverse from every defendant."  Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1564 (11th Cir. 1994).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  That is, a plaintiff cannot join non-diverse defendants to an action solely to preclude the jurisdiction of a federal court.  If the Court finds that certain defendants have been fraudulently joined, the Court overlooks the citizenship of those defendants when conducting its jurisdictional analysis.  Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997).

The removing party has a "heavy" burden of proving fraudulent joinder.  Id. at 1538.  "In a removal case alleging fraudulent joinder, the removing party has the burden of proving either:  (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently

pled jurisdictional facts to bring the resident defendant into state court." Id.  The Court must base its decision on the plaintiff's pleadings at the time of removal, although the Court may also consider supplementary affidavits later submitted by the parties.  Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005).

When determining whether non-diverse defendants have been joined fraudulently, the Court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of plaintiff.  Crowe, 113 F.3d at 1538.  "[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved."  Id. at 1541-42 (citation and quotation omitted).  "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."  Id. at 1538 (quotation and citation omitted).   Travelers does not argue that the School District fraudulently pled jurisdictional facts to bring Action into state court, and it does not challenge that the School District can establish a cause of action against Action.  Instead, Travelers argues that the

Eleventh Circuit's decision in <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353 (11th Cir. 1996), <u>abrogated on other grounds by</u> <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000), creates a separate fraudulent joinder rule that "where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability," the parties have been fraudulently joined. (Opp. to Remand, at 15.)  Travelers argues that the basis for the School District's breach of contract claim against Action occurred prior to Travelers' expense of funds to complete the Project and that the PSA replaced the original Performance Bond.  Thus, there is no "real" connection between Action and Travelers.  It argues that because the School District does not expressly state in the Complaint that Action and Travelers are jointly and severally liable, Plaintiff has failed to properly allege any basis for joint and several liability.

The School District argues that the PSA does not replace the Performance Bond, that language in the PSA makes it clear that the Performance Bond is still in effect, and that it has the right to sue Action for breach and default of the construction contract.  It further argues that <u>Tapscott</u> does not apply here because Action and Travelers are jointly and severally liable to the School District under

the express terms of the Performance Bond, which is incorporated by reference into the Complaint, and under Georgia law.

In Tapscott, the plaintiff, an Alabama resident, filed a state law class action against four defendants, one of which was also an Alabama resident, alleging fraud in the sale of service contracts on automobiles.  An amended complaint contained four additional named plaintiffs, two of which were also Alabama residents, and three additional named defendants, including Lowe's, a North Carolina corporation.  Unlike the previous complaints which alleged violations arising from sales of service contracts in connection with the sale of automobiles, the second amended complaint alleged violations arising from the sale of "extended service contracts" in connection with the sale of retail products.  Defendant Lowe's was the putative defendant class representative for the "merchant" class.  The joinder of defendants was accomplished solely through Rule 20 of the Federal Rules of Civil Procedure.

The district court found that Lowe's had been fraudulently joined because there was no allegation of joint liability between Lowe's and any other defendant and no allegation of conspiracy.  It stated that there was an "improper and fraudulent joinder, bordering on a sham."  Tapscott, 77 F.3d at 1360.  On appeal, the Eleventh Circuit upheld the district court and noted that the alleged transactions

involved in the automobile class were "wholly distinct" from the alleged transactions involved in the merchant class. It reasoned: "Although certain putative class representatives may have colorable claims against resident defendants in the putative 'automobile' class, these resident defendants have *no real connection* with the controversy involving . . . the 'merchant' class action.. . . We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder." Id. (emphasis added).

Tapscott simply does not apply here. In this litigation, there is a real connection, legally and practically, between Action and Travelers–Travelers acted as the surety on a Performance Bond for Action, and the Performance Bond specifically stated that Action and Travelers would be jointly and severally liable in connection with performance obligations on the Project. When Action allegedly defaulted on the construction contract, Travelers assumed responsibility for construction of the Project until it entered into the Partial Settlement Agreement with the School District. The defendant seeking removal bears the heavy burden of showing that there is no possibility the School District's claims against Action can succeed. Here, Travelers does not and cannot make this showing. To the contrary,

the legal relationship between Action and Travelers justifies the claims the School District has asserted.

Based on the facts and claims alleged in this action, the Court concludes the School District's claims against Action are indeed plausible, and there is no basis to assert that Action was joined fraudulently. Litigation in state court will determine the respective liabilities of Action and Travelers, in addition to the role of the PSA and the Performance Bond. Travelers simply has failed to carry its heavy burden to establish removal and fraudulent joinder. Thus, remand is required here. Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly [and] all doubts about jurisdiction should be resolved in favor of remand to state court.").

B.     Attorney's Fees

28 U.S.C. § 1447(c) authorizes an award of attorneys fees to a party who successfully seeks remand. "[A]bsent unusual circumstances, attorneys' fees should not be awarded when the removing party has an objectively reasonable basis for removal. Conversely, when an objectively reasonable basis exists, fees should be denied. Martin v. Franklin Capital Corp., 546 U.S. 132, 135 (2005).

The mere fact that a case is remanded does not create a presumption in favor of awarding fees.  See Bauknight v. Monroe County, Fla., 446 F.3d 1327, 1329 (11th Cir. 2006).

Travelers acted unreasonably by raising the fraudulent joinder argument here.  Tapscott is not controlling, and there is clearly a "real" connection between Action and Travelers and their involvement with the Project.  Travelers' argument that Action is fraudulently joined because the Complaint does not explicitly use the language of joint and several liability is untenable.  The Performance Bond, which is attached to the Complaint, clearly states that Action and Travelers are jointly and severally liable on the Project.  Moreover, Travelers does not even argue that Plaintiff could not succeed in any claim against Action.  Thus, attorney's fees are appropriate.  The School District, however, does not provide a calculation of attorney's fees it has expended in contesting removal, and it has not submitted an affidavit on this issue.  The request for attorney's fees is thus denied.

    C.    <u>Traveler's Motion to Drop a Party, or in the Alternative, to Sever Claims</u>

Travelers argues that Plaintiff's claims against it are legally and factually distinct from its claims against Action.  Thus, it asks the Court to sever the claims

against Action and remand those claims to state court.  This Court has concluded that Action is not fraudulently joined, and because Action and the School District are Georgia residents, the Court does not have subject matter jurisdiction.  The issue of severability is best addressed by the state court on remand.  Travelers' Motion to Drop a Party or to Sever is denied.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [10] is **GRANTED** in part and **DENIED** in part.  The Clerk of Court is **DIRECTED** to **REMAND** this action to the Superior Court of Henry County, Georgia.  Plaintiff's motion for attorney's fees is **DENIED**.

**IT IS FURTHER ORDERED** Defendant Travelers' Motion to Drop a Party or to Sever [16] is **DENIED** as **MOOT**.

**SO ORDERED** this 6th day of September, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE